Good morning, Your Honors. May it please the Court, Lythia Borak Bowden on behalf of Appellant Coastal Environmental Rights Foundation, or CERF, and I'd like to reserve five minutes for rebuttal, if I can. I'll watch the clock. Your Honors, the lower court's determination in this case was incorrect on two different issues. It was clearly erroneous on the evidentiary findings as to the normal operation of fireworks, and concluding that that does not result in a discharge. And it was legally incorrect in the application of the Section 505 Clean Protection Requirements for citizen suits. In light of the video evidence, the photographic evidence, the eyewitness testimony, the three regional board findings, and NPDES permits in this case, the monitoring data in the prior years that was submitted on behalf of Naples, and the court's own conclusions on the fact that the fireworks do result, that the fireworks do constitute a point source, all that points to the clearly erroneous conclusion that fireworks do not result in a discharge when normally operating. Counsel, before you get to those merits, can you address the mootness question? Yes, Your Honor. That there is now a license here. Yes, Your Honor. As the respondent, Naples, concedes, the fact that there is a permit here does not moot the case, because so long as the court can award civil penalties, that keeps the controversy alive, because the penalties serve a deterrent effect. I'm not sure that's correct, because under the citizen suit provision, you have to show an ongoing violation, as the Supreme Court has construed that language. And so, if we have a permit, and the parties in this case have availed themselves of the permit, and as I read it, your allegations are simply that they were doing something that is in violation of the Clean Water Act without a permit. How do we have a live case? You're absolutely correct, Your Honor, that the Supreme Court in Gwaltney decided, interpreted the Section 505 language that the discharger has to be in violation, but the language is alleged to be in violation, and as this court has found, the test is at the time of the filing of the complaint. So, there is an ongoing violation at the time of the filing of the complaint, and that can be proven by the time the case goes to trial. So, when you have a 60-day notice letter, as SRF did here, you issue a 60-day notice letter, you allege the violation, and by the time you go to trial, you have to allege in good faith that the discharger is in violation at the time of trial, prove the ongoing violation. Here, if there was an ongoing violation at the time of the filing of the complaint, that's when the penalties are accrued. And so, even if the activity is no longer, there's no chance that the activity can continue, even if the facility, in this case the fireworks, completely shut down, because the civil penalties accrue at the time of the violation, the case is not holding, and even respondents acknowledge they're not arguing that the case has moved. I guess I'm struggling with how citizen suits work, because any sort of financial penalty is not coming to your client, it's going to the government. And so, why, when the statutory language for a citizen suit says that it has to be an ongoing violation, and our doctrine says that we have to have jurisdiction at all stages of the case, and at some point along in this case, we no longer have an ongoing violation, I'm not clear why it is that we still have the ability to give relief here. Your Honor, I think there's just a confusion about the standing, mootness, and ongoing violation, subject matter jurisdiction issues. So, the ongoing violation has to be proven for subject matter jurisdiction in terms of citizen suits to attach. Mootness is a separate issue, and the court has said it has to be absolutely clear that the alleged conduct will not reoccur. And that was actually, the Baltimore Fourth Circuit armament said, you know, continuing violations are no longer likely. Was that not the case here, where you allege that they violated the Clean Water Act without a federal permit, but now they have a permit? So, it's totally, there's no reason to believe that that violation would reoccur. Well, Your Honor, that's under the second prong of Gwaltney, but under the first prong, so long as you show that there's a post-complaint violation that jurisdiction attaches, and that's the Section 505 jurisdictional requirement. And the court isn't divested of jurisdiction later on, so long as there's jurisdiction. Well, there's Article 3 jurisdiction here, so that's my problem. What's, you know, the injury, you know, occurred, your clients, you know, could have been injured by that discharge of the fireworks. That's fine, but, and if there was an ongoing violation, then we could have ordered some redress of that. But here, given that it's been cured, we can't even, we can't order injunctive relief because it's already gone. And the penalties don't apply to your clients. So, there's no redress here. Your Honor, this issue is not briefed, but the Laidlaw case does address that, and it separates out, you know, mootness, standing, and the continuing jurisdiction of the court. But I just would like to parse out the difference between what I believe Your Honor's getting at is the abatement, the ability to abate and offer injunctive relief. That may be true. There are three prongs of Article 3 jurisdiction, injury, traceability, and redressability. I don't see what redress we can offer to your New York clients. The, our clients would still be benefited by a favorable decision because the civil penalties serve a deterrent effect, and that would still redress the harms alleged under the Article 3 standard. The redress would go to the government, so it would have no impact on your client. Your Honor, I would say we haven't briefed this. I would love an opportunity to brief under Laidlaw that, in that case, the court did find, and I don't have the case at my fingertips, but it did find that despite the fact that the penalties don't go to the plaintiff, and they do go to the treasury, they do serve a purpose in deterring the unlawful activity, and that in and of itself is enough to redress the harms to the plaintiff because it's... But it doesn't make sense in this case where they've gotten the permit, so there's nothing to incentivize. It does, Your Honor, because there's still a deterrence for others and for the particular defendant to continue to maintain that permit and to comply with the permit. And in Laidlaw, I believe the facility had completely shut down, and the court still found that those penalties serve a deterrent effect. I may have read the complaint a little bit more broadly than others did, but I did not read your complaint to say that it was solely a basis of not having a permit. I thought it was just more broadly under the statute it was an unauthorized discharge. Permit or not, you can certainly have a permit and still have an unauthorized discharge. This is an annual show, as I understood it, so it goes on every year, but is your complaint really just the discharge was without a permit and that's it? Or was it more broadly, was it just an unauthorized discharge generally under the statute? If it were the latter, I don't think I would see much of a mootness concern. If it were without a permit, I may have a problem. Well, Your Honor, I think it was an unauthorized discharge in part because there was no permit, but because there is no permit, there are also no parameters to define what constitutes the authorized discharge. In looking at the permit, if you take judicial notice of it, you can see that it requires more monitoring than was conducted. It required certain cleanup activities that the respondent didn't participate in prior. So the permit does lay out the contours of how a discharge can be legally done. So I do, I think it is broader than just the permit, Your Honor. I guess, I mean, this is no fault of the parties, of course, because the facts on the ground were different when this case started than they are now, but I guess I'm struggling with that a little bit because the way that the complaint is set out is this was unlawful because you don't have a permit, and now the argument would be this is unlawful because you're not following the permit, but there was no, there was no allegation for the courts to wrestle with when this case started about, as you just said, parameters, because there weren't any, because the problem was no permit. So I don't know how we would expand the case that was all about no permit into now you're not following the permit, when nobody at the outset of this case could have anticipated what those parameters might be, because it just didn't exist. I think the most analogous fact pattern I can think of, Your Honor, is, I think, in the Southwest Brain case where, NRDC versus Southwest Brain, where the court found that at the time a notice letter is sent, if it's sufficient to put the party on notice, the discharger on notice of what the allegations are, and then the complaint is filed, and in between that time, the discharger takes steps to remediate that issue, and new issues arise, then does that make that notice no longer valid? And the court said no. So long as the notice is sufficient at the time, and the parties proceed, and the case proceeds, and there's still a continuing or ongoing violation, that's sufficient. So I think we could interpret the complaint in a way that would not make the case move. But I still do really want to emphasize that just the simple penalties keep the case or controversy alive. And I would like to refer to our brief at pages, I'm sorry, Your Honors, let me, if I could find that citation. I mean, I would agree it keeps it alive for the government, at least, but I just don't understand what your client's interest is if the government receives a penalty. Again, Your Honor, I think that's directly addressed in Laid Law, that's the Supreme Court decision in Laid Law, and I do think there is a benefit to our client in redressing the harms through the deterrence effect of the penalties. To not just not Naples, but other people, you're saying? Both, yes, Your Honor. Well, we've thrown you a curve ball this morning, and we recognize that. So why don't you go ahead and address the merits arguments which you have prepared to present today? Thank you, Your Honors, and I believe it's at page 68 of our brief that we address part of the mootness argument. And in keeping with the in-violation language, in Walton Ian and the Supreme Court's decision and then on the Fourth Circuit on remand, the test is looking at the allegations at the time the complaint was filed and whether the discharger was in violation or there was a continuous violation at the time. And it's inconsistent, Your Honors, to find that there was a violation at the time of the 2022 show, which is post-complaint, and then to say the first prong of Walton Ian was not met because of an either or test. Either there is an ongoing violation at the time the complaint is filed, and that can be proven by a post-complaint violation, or there isn't. And the district court found that it requires two violations in order to meet the Section 505 requirements, and that's just inconsistent with the plain language of the statute, which says, in relevant part, any citizen may commence a civil action on his own behalf against any person who's alleged to be in violation. It doesn't say violations. And then the language that we briefed in our briefs last night. I just jumped in, Counsel. So sort of the classic police violation is, you know, there's a pipe running out of a factory that is draining daily. Every day is draining effluvia from the factory industry. Or once a week there's a regular release. There's something that is an obvious, regular-happening discharge. I agree with you for Rule 12. To survive a motion is to dismiss. All you have to say is, we have a good-faith allegation that's continuing. But judgment day comes. Judgment day came here, and you proved to the district court one violation a year or so after the complaint was filed. So one violation a year after. The pleading presumptions don't help you at that point because this is now an evidence-based decision. So it does have to be ongoing. It has to be continuous. Regardless of whether it's plural or not, you can't have just one. That's sort of the takeaway. You can't just have a one-off. So where does that leave you? Well, Your Honor, I would disagree that it's a one-off or that you can't just have one because nothing in any of the decisions in Gwaltney at the Supreme Court or at the Fourth Circuit indicated that you have to have plural violations. And the language is quoted in our briefs. I'm not really focusing on plural. I'm just focusing on ongoing and continuing, both of which imply something more than a single, discrete, in-time event. Your Honor, I think the language is to be in violation. It's a state of violation. And I think the ongoing and continuous language is just a looking forward. Does the court have the ability to abate? Will an injunction afford any kind of relief? And that's because of the way that the jurisdictional language is written. Civil penalties are tied up with the ability to get an injunction. And so in violation is a state of being. And if, as in the Carr v. Altadena decision that was out of the Fifth Circuit, if there is a violation post-complaint, that shows that the discharger was in violation at the time of the filing because there the court found, and I think Your Honor alluded to this, that the failure to obtain a permit is different than an exceedance of an effluent limitation once or twice or however many times. By failing to obtain a permit and then discharging, that's a continuous state of violation. And until that permit is obtained, that's being in violation. And so I think that gets to the point, Your Honor, of showing that it's different based on the type of violation alleged. And if I could just use an analogy, if there's a 60-day notice letter alleging a monitoring report was not submitted or prepared, a complaint is filed, and then six months go by after the complaint was filed, and then finally the discharger submits the report, that discharger was in violation for that whole time. It was a continuous violation, even though it was one. And so... How do you get around Sierra Club, which is where we say, by proving violations, I should continue on or after the complaint? Your Honor, I think that is language because of the application of the Fourth Circuit's remand instructions. And when Baltimore was remanded to the Fourth Circuit, there were multiple violations. I think it was in the hundreds of violations, they were all pre-complaint violations. So in articulating that standard for remand, the court was focused on, how do I instruct that court when it goes back to the district court and say, this is how you can prove an ongoing violation. You can show continuing violations after the filing of the complaint or evidence of recurring violations that are reasonably likely to occur. And so, I don't think that's a foreclosure of one violation, I think it's just the Fourth Circuit's test being reiterated. Yes, and in Natural Resources Defense Council v. Southwest Marine, the Community Association for Restoration of the Environment v. Henry Bosman Dairy, and even most recently in Inland Empire Waterkeeper v. Corona Clay, the court also uses a singular. It's sort of interchangeable, I think it's just a copying and pasting of the standard, Your Honor. All right, unless there are more questions at this moment, I will give you time for rebuttal. Thank you, Your Honor. May it please the Court. My name is Anusha Pillay, and together with my colleagues at Collier Walsh Nakazawa, we represent the Appalese Naples Restaurant Group and John Morris. Good morning, Your Honors. Without express authorization from Congress, servants ask this Court to expand the EPA's authority to regulate fireworks under the Clean Water Act. To address Judge Donato's point, Your Honor's point, even if the civil penalties keep the controversy alive, ongoing and continuous under Gwaltney is much less strict. The permit completely forecloses potential for future violations, particularly by the claim of relief, where the claim for relief is that of a discharge without a permit. And that is the single cause of action in a plaintiff's operative complaint, a discharge without a permit under the Clean Water Act. First, I will argue why the District Court did not err in finding that SIRF failed to prove a continuing and ongoing violation of the Act. Second, I will argue why fireworks are not a point source under the Act. And lastly, why the Act does not apply to fireworks. Now, SIRF maintains that... Let me address some of the jurisdictional questions, the mootness questions we had. Yes, Your Honor. So, you're saying that the case is still alive, but why do they have Article III standing? Your Honor, the only reason that they had standing in the first place is because they had a good faith allegation that they alleged a continuing and ongoing violation. While that was challenged, the standard is under Rule 11. The Court found that they had met that threshold jurisdictional standard for standing. However, Gwaltney of Smithfield makes clear that the most natural reading of 2B in violation of the Act... In fact, it found that phrase ambiguous and then resolved the ambiguity by finding that 2B in violation is a requirement that citizen plaintiffs allege a state of either continuous or intermittent violation. That is a reasonable likelihood that a past polluter will continue to pollute in the future. And then the Supreme Court in Gwaltney of Smithfield... Your client has the permit now. So, therefore, that's unlikely that that violation is going to happen. Correct. So, why isn't this case moot? Your Honor, under the case law mootness, we do not concede... Naples does not concede there is a mootness here at this point in time. However, mootness... No, I'm kidding. I'm sorry. What is it? We do not... We believe this case is moot, yes or no? We believe the case is moot. However, we do believe the case is moot. That said, Gwaltney of Smithfield requires... The Supreme Court requires that plaintiffs prove their allegations. So, while they may meet that threshold jurisdictional standing by merely alleging, in good faith, continuing ongoing violations, at the end of the day, they have to prove their case that they didn't hear. And that's why, I mean, you haven't challenged jurisdiction in your briefing, even though you were aware of the permit. And so, I've been trying to sort of figure that out. You really want a merits ruling, it seems. Your Honor, both would be great. Yes. Yeah, the merits ruling. Of course, the court... Naples contends and argues that the court was correct in applying the evidence to the facts with respect to finding that plaintiff did not or cert did not prove its case of an ongoing and continuous violation. They had to prove some sort of past multiple violations, in fact. So, either... I mean, as I'm hearing your argument, none of that depends on the permit or not. You just think that the facts show that there never was one. Correct. The facts show that there never was one. In the past, there was no evidence. Plaintiffs didn't prove their case that there was a violation in the past. The court found that one discharge in 2022 was a violation. We do not contest that there was a discharge in 2022. We do contest that it was by a point source, which I'll address further. There is no reasonable likelihood of a future violation because, based on the court's findings, which are sound, the very exceptional instance of an exceptional low break in 2022 is unlikely to recur. Number two, there was a permit obtained in 2022. To close out of mootness, for me at least, are you saying the case is now moot because the complaint based the unauthorized discharge solely on the absence of a permit? Or is that if that's... So, if the complaint were read, though, to be an authorized discharge separate and apart from whether they had a permit or not, it wouldn't be moot in your view. Is that right? Well, you're right. They would have to... If CERF had alleged that an unauthorized discharge, regardless of whether there was a permit, then the next question would be, well, if there was a permit, was it violated? And none of that was before the court at the trial court level. It would be speculated to assume that Naples would violate the permit in the future or something. Correct, yes. So, to me, I see that there's a... I think we're a little bit talking past each other. So, there's Article III standing and there's statutory standing. You're arguing purely on the statutory that they didn't prove their case and, therefore, they're not standing under the statute. My concern is more, which I think is antecedent to that, is whether or not there's Article III standing. And given that, you know, they... I think they properly alleged an injury. And then they've been given... Prior to them getting the permit, we could have remedied that injury by issuing an injunction. But now that that's off the table, because Naples now has a permit, I just don't understand what remedy we could give them for their past injury. Since the statute doesn't allow us to provide... surf any money. It only goes to the government. So, I guess that's what I'm trying to get at. Your Honor, we don't see that there is any remedy for... Number one, we don't see that there was a past injury in the first place. So, I assume that that's correct. But they sustained an injury because there was a discharge into the bay. The rest is, you know, how can we redress that injury? At this stage, there is no redress. A permit was obtained. There is nothing... So, then why is this case excluded under Article III? We have not... Article III standing at this point. I wonder... It seems like both sides would prefer to give a supplemental briefing on this issue. Yes, Your Honor. That would be helpful for you. Yes. Okay. So, the District Court properly found that surf failed to prove either prong under Gwaltney. The test that was outlined in Gwaltney in the Fourth Circuit, that has been adopted by the Ninth Circuit. The test is that violations that continue... They had to show violations that continue on or after the date the complaint is filed. Or, by deducing evidence from which a reasonable trier of fact could find a continuing likelihood of recurrence in intermittent or sporadic violations. And the court assessed either... It wasn't a situation where the court required them to prove both. It required them to prove either or. They proved neither. And the case law is clear that there must be proof of multiple violations. Continuing violations. A past polluter continuing to violate the future. Continuing to violate the present or the future. And QSERF has not identified any case in which only a single violation was deemed sufficient to meet the continuing and ongoing standard. Simply, they didn't prove the case. This is an annual show, right? Every July 3rd, the restaurant sponsors this big display. Yes, Your Honor. Is there any evidence in front of the district court about the failure rate for the fireworks? I didn't see anything, but was there anything like a 4% expected failure rate, like a low break? Or, somebody will shoot into the ocean. Was there any evidence to that effect? Your Honor, there was... In the year in which the discharge was found, in 2022, that there was one low break under 10 feet. Otherwise, the evidence from the only expert on fireworks at trial testified that a show of 300 to 400 shells may result in a low break of 20 to 80 feet. However, there was no evidence set forth by QSERF or otherwise at trial that would suggest that as to the likelihood of an exceptionally low break. In fact, the court found that this was incredibly rare based on the evidence at trial, the number of years in the show, and the lack of proof of any other low break of that magnitude. And here, the district court's findings are... As a trier of fact, the district court was in a superior position to appraise and weigh the evidence. Indeed, the district court's findings took into fact the account of the speculative nature of eyewitness testimony, the conditions at night that impact visibility, the distance between the eyewitnesses and the fireworks displays, and the obfuscation of the base reflection of firework stars in the air as opposed to actual contact. It took into account the eyewitness evidence of other fireworks displays operated by private homeowners surrounding the bay that was not sanctioned by Naples. And the trial court properly weighed the eyewitness testimony, the testimony before it, the scientific evidence, and there was substantial evidence to support the findings in this case that there was no proof of a continuing ongoing violation. The reports, the water quality reports that plaintiff has brought forth to the court's attention do not show any consistently yielded increases or decreases in the elements at issue. The permitting schemes that plaintiff relies on are not judicially noticeable. Although the fact that there were permitting schemes by other regional boards in this case may be taken as judicial notice, the statements therein were not subject to judicial notice, whether permissively or mandatorily. They cannot be accurately and readily determined from sources whose accuracy cannot be questioned. And the low break, the singular low break in 2022 was an extraordinary event. And CERF offered no competing evidence as to the probability of that occurring in the future. CERF also ignores the definition of purpose of a fallout zone as established on the record, inserting its own speculative definition without any scientific evidence. The fallout zone is not, as CERF argues, the expected radius of fireworks-related debris. It is there because of safety. The undisputed expert testimony is that the fallout zone is the area designated a safe part against the spectator injuries in the unlikely event that a firework shell fires laterally from a displaced mortar into a crowd instead of vertically in the air as it's intended. And that's in the record for ER 638. That fallout zone is established whether the shell occurs on land or on water. The district, here we, Naples maintains that the district court did err as a matter of law in finding that even if the discharge originated from a non-point source, the court would still find a violation in 2022. And that's in 1 ER 26 on the record. The Clean Water Act does not regulate all discharges of pollutants into navigable waters. It only regulates discharges from a point source. And while point sources can be broadly construed, the scope is not limitless. The Supreme Court in the County of Maui developed a test for the court to determine when a point source exists, where the discharge issue is indirect. And the County of Maui gets the issue of what does from mean, the definition of a point source. There, in order for, the district court erred, clearly erred, in not properly applying the County of Maui factors to this case. The factors, primarily factors four through seven. The extent to which a pollutant is diluted or chemically altered as it travels. The amount of pollutant entering navigable waters, relative to the amount of pollutant that leaves the point source. The manner or area in which the pollutant enters navigable waters, and the degree to which the pollutant at that point has maintained its specific identity. As the expert evidence at trial, the undisputed expert evidence at trial set forth, that fireworks are designed to consume themselves in flight. Where the exceptional low break occurred, there was no predictable flight path, in fact. This all makes sense in the context of U.S. Plaza Health Lab. As the statute stands today, the term point source is comprehensible, only if it has held the context of industrial and municipal discharges. Wasn't there an expert that said a low break will happen one out of every 400 or so? So that is to be, your honor, you're correct. However, that is to be distinguished from an exceptionally low break, such as one that occurred in the 2022 show, which was under 10 feet. The low break that the expert was referring to, in terms of every 300 to 400 shells, that was a low break of 20 to 80 feet. And there was no evidence, by plain or otherwise, that there was the likelihood of that sort of discharge touching the water. Doesn't it make sense that if you're going to be shooting off hundreds of fireworks, one or two are going to be discharged into the ocean? I mean, it's a fact of life, things fail, and nothing's going to be flawless. You do this every year, you know that something's going to fall into the ocean. Why isn't that enough? Your honor, that was two reasons. Number one, that's not what the evidence showed. The evidence over from 2016 to 2022, there was only one. And in fact, the extraordinary low break that was under 10 feet, just slightly high enough to not hit the walls of the barge, but low enough that the court found that it was more likely than not that the discharge, that pollutants entered the water. There was no actual evidence of that firework entering the water at the time. We don't dispute the court's finding that it was more likely than not at that point in time. But the fact that that extraordinarily low break occurred, it's akin to a random act that is not what's meant to be regulated under the Clean Water Act. Number one. Number two, it didn't come from a point source discharge. We maintain there was no point source discharge here. And the reason that we have to strain to interpret the Clean Water Act's definition of a point source to include fireworks, is because the Clean Water Act didn't intend to cover fireworks in the first place. Had Congress intended... You're over time, so if you want to just wrap up. Yes. So had Congress intended to cover Clean Water Act, for the Clean Water Act to cover fireworks, it certainly knew how to do so. The Clean Air Act was contemplated to include fireworks, and then specifically Congress excluded them from that act. Fireworks are shot in the air, not at the water. In closing, CERP did not prove the case, and the Clean Water Act does not apply. Thank you, Your Honors. Thank you, Your Honors. Just quickly on the issue of whether the mootness argument was conceded or raised, I respond at Naples. In their opposition to our request for judicial notice, they stated at page three, quote, But Eppley's own brief belies any notion that the appeal is moot, confirming that point in a subsequent portion of its brief. Moreover, Eppley's will not argue that this appeal is moot. Given that we've kind of smugly raised this, would you want supplemental briefing on this question, or Article 3 mootness, or do you not think it's necessary? Your Honor, we would appreciate it if it helps inform the court. I did find the parts of the brief that we had some discussion of it, and I think it goes to the point of the civil penalties issue. We did cite at page 68 the proposition that in Clean Water Act cases, the mooting of injunctive relief does not moot a plaintiff's prayer for civil penalties, and thus does not moot the case as a whole, and that's Natural Resources Defense Counsel v. Texaco refining to F3rd 493. We also cited Which circuit is that? That's the Third Circuit case. Third Circuit. There's a Second Circuit, an Eleventh Circuit, and a Fourth Circuit. I think there's a surface split on this question, and that's the problem. So we did cite four cases. We did not cite Laidlaw. That is a Supreme Court case, so I think perhaps the supplemental briefing would be helpful. There's an Eighth Circuit case, I think, that goes the opposite way. And I don't think that was cited by respondents, so I do think supplemental briefing might clear up that issue. And with respect to the Clean Water Act ongoing violation and whether we proved our case in chief, I would like to remind the Court that Clean Water Act is a strict liability case, so if there was a violation that was proven post-complaint, the civil penalties attach. And my colleague here stated that not one case has shown that one violation is enough. I would say that the Harvey Altaverde Industries case is considered that. There was only one discharge, and it was pre-complaint, and the Court nonetheless found that is a continuous violation of the Fifth Circuit case cited in our brief. The fallout area is an area where the debris is expected to fall, and that's consistent with the lower district court's opinion that the fireworks constituted discharge. And the Court actually said, quoting the expert back, the applicable fallout zone is 70 feet per inch of shell diameter, which suggests that some fireworks-related material is expected to approach surface waters within a predetermined fallout radius. Based on Dr. Steinberg's testimony, a firework that performs as designed has a predictable trajectory, flight time, magnitude of combustion, burn rate, and fallout zone. It's expected that the debris will fall out in that area and not all of it combusts. The stars may consume themselves before hitting the water, which I think the video evidence is contra that. But the shell casing, the paper, as their expert testified for ER 626, it does not combust, it merely fragments. So some debris is expected to fall out, and it's a 500,000 to 1 million square feet fallout area that's almost entirely over the water. So I think Judge Donato raised a good point to your friend across the aisle about, you know, just as a matter of common sense, can we just look at a situation like this and realize that some amount of firework debris is going to land in the water? And looking at the videos, that seems like a reasonable conclusion to draw. The problem is that we're on clear error review, so I'm trying to figure out how, I mean, if we're on clear error review, if the District Court has a basis in evidence to come out the way that it did, how do we, even if we would come out differently if we were to hear this in the first instance, how do we reverse that? Your Honor, I think the case of Scott v. Harris, the Supreme Court case, is directly on point where there was a determination on summary judgment. The court found that it had to view the facts as most favorable to the non-moving party. And the defendant, which was a police officer, was on a qualified immunity case, actually submitted the video evidence that the Supreme Court said. The video was contrary to what the court found, and the Court of Appeals should not have relied on such visible fiction. It should have viewed the facts in the light depicted by the videotape. So, on a clear error, even on a summary judgment, where you have to take the facts most favorable to the non-moving party, the standard, it can't be contradictory to what the video shows. It can't be contradictory to what is, frankly, almost judicially noticeable. What goes up comes down. What their experts say to everything else in the record, except for the expert opinion that he didn't see anything fall into the water. Okay, I'm glad you got way over. Any other comments from the court? No, thank you. Thank you, Your Honor. Thank you both for your helpful arguments. The matter of Coastal Environmental Rights Foundation vs. Locals Restaurant for Federal is submitted for decision. And we are in recess for the rest of the night. All rise. Court shall stand at recess for today.
judges: FORREST, BUMATAY, Donato